ALTENBERND, Judge,
dissenting.
The Unemployment Appeals Commission disqualified Mr. Strazisar from receiving unemployment compensation benefits due to misconduct. Mr. Strazisar is a leased employee who has been denied unemployment benefits because of a confusion in communications during the pendency of his workers’ compensation claim. At worst, his “misconduct” was a negligent reliance upon an insurance adjuster to provide information to his employer’s client. Because I conclude that the Commission’s order is not supported by competent, substantial evidence and does not reach a correct conclusion of law, I would reverse.
This case exemplifies the Commission’s recent tendency to rule against an employee on the issue of misconduct even when the employer does not appear at the hearing before the appeals referee and the employee has a logical explanation for the conduct. I am inclined to believe that the Commission has lost focus of three important rules of law applicable to unemployment benefits. First, the statutory definition of “misconduct” is specifically designed so that an employee is protected from disqualification in all but exceptional circumstances. See § 443.036(26), Fla.Stat. (1991). Second, the employer has the burden of proving disqualification at the hearing before the appeals referee. Rogers v. Florida Unemployment Appeals Comm’n, 597 So.2d 382 (Fla. 2d DCA 1992). Third, this statute is intended to be liberally construed, § 443.031, Fla.Stat. (1991), recognizing an express declaration of public policy that unemployment “so often falls with crushing force upon the unemployed worker and his [or her] family.” Section 443.021, Fla.Stat. (1991).
Mr. Strazisar was employed from November 1989 until April 1992 by Staff Management Systems, an employee leasing company. See § 443.036(16), Fla.Stat. (1991). Feather Sound Country Club was a client of Staff Management. Mr. Strazisar was “leased” to Feather Sound to perform golf course maintenance. A doctor placed Mr. Strazisar on light duty status after he injured his back while at work on December 2, 1991. On December 19, a representative of Feather Sound told Mr. Strazisar that it no longer had light duty work, that he should contact the workers’ compensation representative, and that he should keep Feather Sound advised of his medical progress and the date he expected to return to work.
Although the appeals referee found that Mr. Strazisar did not contact the workers’ compensation representative, the record is undisputed that he established his claim with the appropriate insurance company, Armor Insurance. He was assigned to a specific adjuster who communicated with him on a regular basis. Mr. Strazisar maintains the adjuster assured him during the several months of his medical treatment that she was making reports on his progress to his employer on a weekly basis. She was sending him letters, and he believed she was keeping Feather Sound informed as to his status. Unfortunately, her reports were apparently sent to Staff Management, which did not always forward copies to its client.
According to a letter sent on behalf of Staff Management to the claims examiner prior to the hearing, Feather Sound received notification from Armor Insurance in early March 1992 that Mr. Strazisar had been released to return to work on March 13. The report, however, was incorrect. Feather Sound apparently scheduled him to return to work on that date. Mr. Strazisar was not notified and did not report to work then. On April 3, 1992, his doctor released Mr. Strazi-sar to return to work. This is confirmed in the record by the doctor’s certificate. Mr. Strazisar promptly went to Feather Sound and was terminated for failing to maintain contact during the period of his workers’ compensation claim.
The appeals referee was clearly influenced by the fact that Mr. Strazisar had called his employer on a couple of occasions and had decided not to leave a message on a telephone answering machine. Mr. Strazisar is probably not unique in his distaste for talking to such devices. Interestingly, he also owned such a machine and there is no evidence that the employer or Feather Sound ever left a message for Mr. Strazisar asking for an update on his status.
*878 The appeals referee denied Mr. Strazisar’s claim for unemployment compensation because Feather Sound’s instruction to keep in contact was a reasonable request, and Mr. Strazisar did not personally stay in contact during the four months. The referee’s decision relies upon an inadequate, abbreviated definition of “misconduct” as “an intentional act or course of conduct by the worker in violation of his duties and obligations to the employer.”[1] The referee found misconduct, stating:
Simply because the workers’ compensation representative was keeping in touch with the employee leasing company by sending reports, this did not alleviate the claimant of a responsibility to report to the supervisor [at Feather Sound] as instructed. The claimant did not do what a reasonable person would do in order to maintain a continuation of employment. The claimant not only demonstrated a deliberate disregard of the employer’s interests but also of his obligations to the employer.
The Commission affirmed this determination of “misconduct.”
In many different factual settings, Florida courts have held that an employee’s failure to personally communicate information to the employer, though poor judgment, was not misconduct within the meaning of the unemployment compensation law. See, e.g., Gadsden v. Florida Unemployment Appeals Comm’n, 616 So.2d 1196 (Fla. 2d DCA 1993) (relying on third party to relay messages regarding continued absence from work was poor judgment, not misconduct under the law); Tucker v. Florida Dep’t of Commerce, 366 So.2d 845, 847 (Fla. 1st DCA 1979) (reliance on third party and failure of employee to keep employer personally informed of circumstances did not amount to misconduct justifying denial of benefits); Fredericks v. Florida Dep’t of Commerce, Indus. Relations Comm’n, 323 So.2d 286 (Fla. 2d DCA 1975) (employee’s failure to inform employer of his situation was not misconduct which would disqualify him from receiving benefits).
Mr. Strazisar’s situation is similar to that in Simmons v. Kalin, Inc., 627 So.2d 1175 (Fla. 2d DCA 1993). In Simmons, we held that failure to report during a period of illness was not misconduct when the employee was told to report weekly, but did not respond to several calls from his employer within the span of four days. In this case, Mr. Strazisar had not been told to report on a weekly basis. He could have reasonably concluded that the insurance adjuster had been providing the needed information during his recovery.
It is unlawful for an employer to intimidate or coerce an employee because the employee has made a valid claim for workers’ compensation benefits. Section 440.205, Fla.Stat. (1991). Feather Sound’s request for a medical status report in this ease is certainly not intimidation, but I am still troubled by rules that allow an unskilled laborer to be fired and to lose unemployment benefits when he or she does not fulfill unwritten general instructions during recovery from a work-related injury. This problem is exacerbated when the laborer must cope with the complexity of communications with both an employer that is an employee leasing company and another company that is the leasing company’s client.
Neither Staff Management nor Feather Sound chose to attend or present evidence at the hearing before the appeals referee. Mr. Strazisar provided a reasonable explanation for his actions. The referee does not appear to have rejected any critical testimony on the basis of credibility. Without additional evidence from the employer, I cannot conclude that the Commission had the authority to regard this situation as a matter rising to the level of statutory misconduct.

. Section 443.036(26), Florida Statutes (1991), defines "misconduct” as including:
(a) Conduct evincing such willful or wanton disregard of an employer’s interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his [of her] employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his [or her] employer.